**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Innovative Health Technologies,<br><br>   Plaintiff,<br><br>v.<br><br>Rustam Urmeev,<br><br>   Defendant. | No. CV-18-03372-PHX-ROS<br><br>**ORDER AND FINAL JUDGMENT** |

Plaintiff Innovative Health Technologies ("IHT") seeks default judgment against Defendant Rustam Urmeev. (Doc. 72). While IHT is entitled to default judgment, it is not entitled to the full amount of monetary damages it seeks nor is it entitled to the full scope of injunctive relief it requests. Thus, the motion for default judgment will be granted in part.

## BACKGROUND

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). The second amended complaint sets forth the following facts. (Doc. 38). "IHT is a market leader in innovative medical devices for the consuming public." (Doc. 38 at 5). After years of research, IHT developed its "AVEOtsd apparatus" to treat snoring and sleep apnea. That apparatus is "a one-piece tongue stabilizing device formed of a resiliently flexible material and comprises a body having a hollow interior within which the end of a user's tongue fits and is held by negative

pressure."  (Doc. 38 at 5).  IHT obtained a patent covering that apparatus ("the '506 Patent") and began selling the apparatus throughout the United States and internationally. IHT advertises the apparatus on a nationwide and worldwide basis.

Sometime prior to 2017, Urmeev and his partners established a business known as "ZenSleep."  As early as January 2017, Urmeev and his partners manufactured and sold a variety of "snoring solutions" through ZenSleep.  One of those "snoring solutions" was an apparatus known as the "ZenGuard." (Doc. 38 at 7).  The ZenGuard reads on all the claims of IHT's patent.  In fact, it appears to be a simple copy of the AVEOtsd apparatus.  In marketing the ZenGuard, Urmeev claimed he invented the ZenGuard and that there was "nothing like [it] on the market." (Doc. 38 at 7).  And on the ZenSleep website, Urmeev claimed ZenSleep was an "FDA Approved Facility" and that the facility had been featured in publications such as Forbes and WebMD.  (Doc. 38 at 8).  All of these representations by Urmeev were false.  In addition, the ZenSleep website contained an instructional video allegedly explaining how to use the ZenGuard.  That video, however, "actually shows IHT's AVEOtsd devoice, and not the infringing ZenGuard product." (Doc. 38 at 8-9). Using a video showing IHT's product to advertise the ZenGuard establishes Urmeev was aware of IHT's product and was consciously attempting to capitalize on that product's success.

IHT learned of Urmeev's sale of the infringing apparatus and repeatedly informed him that he was infringing the '506 Patent and engaged in false advertising.  Urmeev ignored those communications and continued to sell the infringing apparatus.  Thus, Urmeev had "actual knowledge and notice of IHT's ownership of the '506 Patent" but continued his infringing activities.  (Doc. 38 at 10).

In October 2018, IHT filed the present suit against Urmeev's business partners. (Doc. 1).  Later, IHT added Urmeev as a defendant. (Doc. 38).  IHT alleged two claims against Urmeev and his partners: 1) patent infringement; and 2) false advertising/unfair competition under federal law. (Doc. 38 at 10-11).  IHT alleged Urmeev's conduct was "willful, wanton, and deliberate" such that any damages for patent infringement or false

advertising should be trebled. (Doc. 38 at 13-14).

Urmeev avoided service but was eventually served through mail, email, publication, and his attorneys for other matters. (Doc. 60). Urmeev never appeared and his default was entered.[1] (Doc. 73). As for his partners, they were served and they filed an answer. The partners produced discovery indicating Urmeev and his partners had total profits in 2017 of $1,558,568 and total profits in 2018 of $406,735.89. No documentation was produced regarding 2016 or 2019. Thus, Urmeev's total profits during the relevant time of 2016 through 2019 were $1,965,303.89. That figure is established by documentation produced by Urmeev's own business partners and there is no reason to doubt the figure's accuracy. IHT and Urmeev's business partners eventually settled, leaving Urmeev the sole defendant.[2]

## ANALYSIS

There are seven factors the Court must consider when determining whether to enter default judgment: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). These factors support entry of default judgment.

First, given Urmeev's refusal to appear or participate in this litigation, IHT has no other means of obtaining redress for Urmeev's behavior. Thus, absent a default judgment IHT will suffer severe prejudice.

The second and third factors can be analyzed together as they involve the adequacy of the complaint and the strength of IHT's claims. The second amended complaint

---

[1] In connection with the entry of default, IHT complied with the Servicemembers Civil Relief Act by submitting an affidavit stating "Defendant Urmeev is not in the military or in military service." (Doc. 71-1 at 2).
[2] The docket also lists "Ecommerce Incubator LLC" as a defendant but that entity appears to no longer exist and IHT does not request judgment be entered against it. Simiarly, the docket lists Urmeev's spouse, "Jane Doe Urmeev," as a party. There is no indication that Urmeev is married or that his spouse was served. Therefore, all claims against Ecommerce Incubator LLC and Jane Doe Urmeev will be dismissed.

adequately alleges Urmeev has repeatedly and intentionally made false statements in advertising the ZenGuard product. Those statements had a tendency to deceive a substantial portion of the public and influence purchasing decisions. And IHT was injured because Urmeev diverted sales from IHT. The second amended complaint also adequately alleges that Urmeev has manufactured and sold products that infringe IHT's patent. Accordingly, IHT's complaint and substantive claims are strong.

The fourth factor requires the Court consider the amount of money at stake. There is a substantial sum at stake. Urmeev has enjoyed close to two million dollars in profits by false advertising and infringing IHT's patent. That sum of money, together with Urmeev's refusal to participate in this litigation, supports granting IHT default judgment, the only form of relief available.

The fifth factor requires the Court evaluate whether there might be disputes regarding material facts. There is no basis in the record for concluding disputes are possible. Given Urmeev's blatantly false advertising and his clear infringement of IHT's patent, it is unlikely that Urmeev's involvement in this suit would have created any genuine disputes regarding the material facts.

The sixth factor requires the Court assess why Urmeev failed to appear. There is no indication that Urmeev's failure to appear is because of excusable neglect.

The seventh and final factor requires the Court address the strong preference for resolution of cases on their merits. In this case, however, it does not appear any such resolution would be possible. Urmeev is aware of this suit but refuses to participate. Therefore, this factor cannot overcome the other factors.

Entry of default judgment is appropriate. IHT requests two different forms of monetary damages and a wide-ranging permanent injunction. IHT is entitled to only a portion of what it seeks.

**A. Monetary Damages**[3]

IHT seeks monetary damages for willful patent infringement and false advertising.

---

[3] IHT may have recovered some funds from Urmeev's former business partners. It is unclear whether Urmeev would be entitled to a setoff against his liability in the amount of

In calculating both forms of damages, IHT uses Urmeev's gross profits. Given the limited discovery produced by the other defendants, IHT determined Urmeev had reaped a total of $1,965,303.89 in gross profits for sales in 2017 and 2018. (Doc. 72 at 13). IHT now seeks to recover those gross profits, trebled for Urmeev's willful conduct, under its false advertising claim. That is, IHT seeks a total of $5,895,911.67 in damages for false advertising. As for its patent infringement claim, IHT seeks a "reasonable royalty" of "no less than 50% profits from sales." (Doc. 72 at 14). Thus, IHT seeks $982,651.95, trebled for Urmeev's willful conduct involving patent infringement, for a total of $2,947,955.83 in damages for patent infringement. These two allegedly separate types of damages, however, arise from the same set of facts and cannot both be awarded.

"Generally, the double recovery of damages is impermissible." *Aero Prod. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1017 (Fed. Cir. 2006). In cases similar to the present one, the Federal Circuit has instructed that when "determining whether there has been an impermissible double recovery of damages, the inquiry focuses on whether the damages issue arose from the same set of operative facts." *Id.* Under that inquiry, damages resulting from patent infringement and trademark infringement might be duplicative. *Id.* at 1019. Similarly, awarding "damages resulting from patent infringement and from unfair competition" can result in an impermissible double recovery. *Id.* at 1017 (citing *CPG Prod. Corp. v. Pegasus Luggage, Inc.*, 776 F.2d 1007, 1014 n.4 (Fed. Cir. 1985)). In general, whenever multiple types of damages "flow[] from the same operative facts," a court cannot award more than one type. *Aero*, 466 F.3d at 1019. For example, if a party is compensated for patent infringement through a "reasonable royalty," that party cannot "also be awarded defendants' profits for trademark infringement based on the same sales of the same accused devices." *Id.*

Here, IHT's patent infringement and false advertising claims both arise "from the same set of operative facts" involving Urmeev's advertising and sale of the ZenGuard

---

those funds. But it is clear that if setoff were allowed, it would be "an affirmative defense which must be pleaded or it is waived." *Glover v. Johnson*, No. CIV-14-936-F, 2016 WL 5854282, at *1 (W.D. Okla. Oct. 6, 2016). Urmeev's failure to appear has waived any possible entitlement to a setoff.

1 product. *Id.* at 1018. Given the shared factual background, IHT is not entitled to double recovery in the form of approximately $9 million dollars. Instead, IHT is free to accept whichever theory will result in higher damages award. *Cf. Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1357 (Fed. Cir. 1998) (party stipulated it would accept the highest award under three related theories to avoid "duplicative recovery"). In this case, because IHT believes false advertising will result in a higher damages award, presumably that is the type of damages IHT prefers to receive. That is the type of damages the Court will analyze.

Pursuant to 15 U.S.C. § 1117(a), a party who prevails on a false advertising claim is entitled "to recover . . . defendant's profits." That statute further provides that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). And "according to the circumstances of the case," the Court may award up to treble damages. *Id.*

IHT has provided documentation proving Urmeev's total sales. While that was enough to shift the burden to Urmeev to provide "all elements of cost or deduction[s]," IHT concedes the same documentation also establishes some of Urmeev's costs. Using that documentation, IHT seeks a total award of $1,965,303.89 in profits. Because this figure is merely the result of mathematical manipulation of Urmeev's own records, no evidentiary hearing is necessary. *See Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981) (holding court must conduct a hearing to determine the appropriate amount of monetary damages "unless the amount claimed is a liquidated sum or capable of mathematical calculation"). Accordingly, IHT is entitled to that amount and the final issue is whether that amount should be increased.

"[T]he Court has the discretion to award up to treble damages for a Lanham Act violation." *A & M Records, Inc. v. Abdallah*, 948 F. Supp. 1449, 1458 (C.D. Cal. 1996). "If the violation is found to be willful," the Court "should award treble damages unless it finds extenuating circumstances." *Id.* Given the allegations in the complaint that must be

accepted as true, Urmeev's conduct was willful. He made a number of obviously false statements in advertising the ZenGuard, such as that he invented it and there was "nothing like [it] on the market." (Doc. 38 at 7). IHT repeatedly informed Urmeev that he was engaged in false advertising yet Urmeev continued his behavior. These facts establish Urmeev's behavior was willful and IHT is entitled to treble damages for a total award of $5,895,911.67. *Cf. Davis v. Koz*, No. 218CV06597VAPJPRX, 2020 WL 2334119, at *6 (C.D. Cal. Apr. 14, 2020) (awarding treble damages in default judgment without hearing).

### B. Permanent Injunction

IHT seeks a permanent injunction prohibiting Urmeev from making false, misleading, or deceptive statements regarding the infringing products, IHT's apparatus, or the patent itself. The permanent injunction would also prohibit Urmeev from infringing or inducing infringement of the patent. Finally, the permanent injunction would allow for IHT to take numerous actions to enforce its monetary judgment, including the automatic involvement of numerous non-parties that might have dealings with Urmeev.

IHT seeks a permanent injunction for both its patent infringement and false advertising claims. While a permanent injunction is not mandatory in a patent infringement action, it is commonly granted. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). Courts also "routinely grant permanent injunctions prohibiting deceptive advertising." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 829 (9th Cir. 2011). For either type of claim, IHT is entitled to a permanent injunction only upon satisfying the four traditional criteria: "(1) that [IHT] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between [IHT and Urmeev], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). All four factors are met here.

Beginning with irreparable harm, it may consist of "price erosion, loss of goodwill, damage to reputation, and loss of business opportunities." *Celsis in Vitro, Inc. v.*

*CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012).  Urmeev's false statements are aimed at diverting sales from IHT and also involve the sale of an apparatus that infringes on IHT's patent.  IHT will suffer irreparable harm in the form of price erosion and the loss of business opportunities if Urmeev is not enjoined from continuing his behavior.

Next, monetary damages are inadequate because such damages, at least in the form of lost profits, cannot account for potential damage to IHT's reputation or the loss of other business opportunities.

As for the balance of hardships, it tips strongly in favor of protecting IHT's patent and forbidding Urmeev from making "false or misleading commercial statements."  The public has an interest in protecting patent rights and not doing so would harm IHT.  It would not be a cognizable hardship to force Urmeev to cease his infringing and false advertising activity.

Finally, the public interest is served by protecting IHT's patent rights and prohibiting Urmeev from misleading the public.  Therefore, IHT is entitled to an injunction prohibiting Urmeev from continuing his behavior.

Beyond prohibiting Urmeev from continuing his behavior, IHT also requests injunctive relief in the form of provisions requiring non-parties to release, automatically, any funds in their possession which belong to Urmeev.  As noted by another court, the proper way to obtain such relief is through the standard post-judgment collection procedures.  *See Allstar Mktg. Grp., LLC v. 158*, No. 1:18-CV-4101-GHW, 2019 WL 3936879, at *2 (S.D.N.Y. Aug. 20, 2019).  Those procedures will allow for the possibility that other creditors have superior claims to those funds.

IHT also requests the Court require other non-parties conducting business with Urmeev to cease doing so.  For example, IHT requests the Court prevent entities operating websites from continuing to display Urmeev's products.  IHT has not cited any authority allowing the Court to require such actions by non-parties.  Therefore, that aspect of IHT's requested relief will not be given.

Accordingly,

**IT IS ORDERED** the Motion for Default Judgment (Doc. 72) is **GRANTED IN PART as set forth above**. Judgment is entered in favor of Plaintiff and against Defendant Rustam Urmeev in the amount of $5,895,911.67.

**IT IS FURTHER ORDERED** all claims against Ecommerce Incubator LLC and Unknown Urmeev are **DISMISSED**. The Clerk of Court shall close this case.

**IT IS FURTHER ORDERED** Defendants Rustam Urmeev and his companies, instrumentalities, agents, servants, officers, directors, employees, successors, shareholders, affiliates, assigns and attorneys, as well as all those in active concert or participation with him and/or those in privity with him (collectively, the "Urmeev Parties"), are permanently enjoined and restrained from:

    a. Infringing or inducing the infringement of the '506 Patent; and/or

    b. Making false, misleading, and/or deceptive advertisements, letters, promotional materials, articles or oral or written statements regarding the nature, quality, characteristics, sponsorship or approval of Urmeev's ZenGuard products, IHT's AVEOtsd device, and/or the '506 Patent.

**IT IS FURTHER ORDERED** this Court shall retain jurisdiction over the parties and the subject matter of this litigation for the purpose of interpretation and enforcement of this Judgment and Permanent Injunction Order.

Dated this 28th day of July, 2020.

Honorable Roslyn O. Silver
Senior United States District Judge